# FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___MAY 2 3 2013



*CHIEF JUSTICE*

This opinion was filed for record
at $8:00$ a.m. on May 23, 2013

Ronald R. Carpenter
Supreme Court Clerk

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ABEDA JAFAR, | ) | No. 87009-8 |
| Petitioner, | ) | |
| v. | ) | En Banc |
| WILLIAM DOUGLASS WEBB, | ) | |
| Respondent. | ) | |
| | ) | Filed _____ MAY 2 3 2013 |

C. JOHNSON, J.—This case asks us to decide whether, under General Rule (GR) 34, courts have discretion to grant only partial waivers of fees and surcharges to indigent litigants. Abeda Jafar filed an action in Snohomish County Superior Court to obtain a parenting plan involving her 19-month-old son. She also filed a motion under GR 34 to waive all mandatory fees and surcharges on the basis of indigency. Jafar's only sources of income are a monthly food stamp benefit and a Temporary Assistance for Needy Families cash assistance totaling $385 per month. The trial court found that Jafar is indigent but granted her only a partial waiver of fees and surcharges, waiving the $200 filing fee but ordering her to pay a $20 courthouse facilitator surcharge and a $30 judicial stabilization surcharge. The

court further ordered her to pay the $50 within 90 days. We granted direct review of the trial court's decision.

We hold GR 34 provides a uniform standard for determining whether an individual is indigent and further requires the court to waive all fees and costs for individuals who meet this standard. The rule was adopted to ensure that indigent litigants have equal access to justice. Any fees required of indigent litigants are invalid and must be waived under the rule. Accordingly, we vacate and remand the trial court's order with instructions to waive *all* filing fees and surcharges.

FACTS

This is an "interlocutory" review, and the facts are undisputed. On January 11, 2012, Jafar filed an action in Snohomish County Superior Court seeking a parenting plan governing custody and visitation for her 19-month-old son. Jafar sought to obtain a parenting plan, in part, because she was concerned about her child's safety with his father, respondent William Douglass Webb.[1] Jafar also filed a motion, pursuant to GR 34, to waive all mandatory fees and surcharges. Along with her fee waiver motion, Jafar filed a declaration stating that she cannot afford to meet her necessary household living expenses and also pay the fees and

---

[1] For purposes of this appeal, Webb filed a response indicating that he takes no position on the issue before us. Washington Association of County Officials filed an amicus brief and presented oral argument.

surcharges. She also stated that she had been dependent on Webb for everything and that she does not have any savings. Jafar also submitted a financial statement showing that she is unemployed and that her only sources of income are a monthly food stamp benefit and Temporary Assistance for Needy Families (TANF) cash assistance of $385 per month. According to her financial statement, Jafar has monthly expenses of at least $380. Jafar's annual income of $4,620 is less than 32 percent of the federal poverty guideline of $14,710 for a family of two.

The trial court entered an order on January 11, 2012, finding Jafar indigent because her household income is at or below 125 percent of the federal poverty guideline. Based on that finding, the trial court ordered that "~~All~~ filing fees ~~and surcharges~~ of $200 the payment of which is a condition precedent to the moving party's ability to secure access to judicial relief are waived." Clerk's Papers (CP) at 2. On the form, the trial court crossed out the word "all" as well as the words "and surcharges" and added the words "of $200." CP at 2. However, the trial court ordered Jafar to pay a "$20 facilitator surcharge" and a "$30 Judicial Stabilization surcharge" within 90 days. CP at 2. The trial court left blank section 3.4 of the form, which provides, "It is hereby ordered that this case shall be dismissed, without further order of the court, on [blank] (date) if any of the above fees have not been paid as ordered." CP at 2. The Snohomish County fee waiver application

packet informs applicants that "[i]f the Court defers payment of your fees to a later date, make your payment as ordered or your action may be dismissed for nonpayment of these fees." *See* Br. of Pet'r, App. A at 5.

We granted Jafar's motion for direct discretionary review of the trial court's fee order.

## ISSUES

1. Is this claim ripe for review?

2. Whether a trial court, under GR 34, may waive only some of the fees and surcharges once a litigant is determined to be indigent under the rule?

## ANALYSIS

1. Ripeness

As an initial matter, we must decide whether Jafar's claim is ripe for review. We have said that in determining whether a claim is ripe for review, we consider if the issues raised are primarily legal, and do not require further factual development, and if the challenged action is final. We also consider the hardship to the parties of withholding court consideration. *First Covenant Church v. City of Seattle*, 114 Wn.2d 392, 399-400, 787 P.2d 1352 (1990), *adhered to on remand*, 120 Wn.2d 203, 840 P.2d 174 (1992).

Amicus Washington Association of County Officials (WACO) does not cite to these requirements or apply them to the facts in this case. Instead, WACO

argues that because the trial court did not dismiss Jafar's action or mandate dismissal for failure to pay the fees, Jafar has not been "'harmfully affected'" by the trial court's decision and therefore her claim is not ripe for review. Br. of Amicus Curiae WACO at 5 (quoting *State v. Massey*, 81 Wn. App. 198, 200, 913 P.2d 424 (1996)). We disagree. Current hardship is not a strict requirement for ripeness, and a case like this has a sufficient immediate effect to satisfy any ripeness concerns. From the perspective of Jafar (and any other indigent litigant seeking access), the order to pay coupled with the requirement to pay in 90 days has an immediate impact similar to any court order compelling action.

We conclude that Jafar's claim is sufficiently ripe. The interpretation of GR 34 presents a purely legal question that can be resolved on the current record and no further factual development would affect our analysis. In addition, the fee order is a final determination of Jafar's waiver request. Finally, the risk of hardship to Jafar is significant and permitting Jafar to bring a challenge to the fee order at this time eliminates any risk of dismissal created under the order.

2. GR 34

The primary issue in this case is whether a trial court, under GR 34, may waive only some of the fees and surcharges once a litigant is determined to be indigent under the rule. Jafar argues that the trial court erred because GR 34

requires courts to waive all fees and surcharges. WACO responds that even when a court determines that a litigant is indigent, courts still have discretion to waive all, some, or none of the fees and surcharges.

GR 34(a) provides, in part, "Any individual, on the basis of indigent status as defined herein, may seek a waiver of filing fees or surcharges the payment of which is a condition precedent to a litigant's ability to secure access to judicial relief from a judicial officer in the applicable trial court." The rule further provides that an individual may be found indigent under the rule in three ways. First, a litigant who receives need-based, means-tested assistance (such as TANF or food stamps), or whose household income is at or below 125 percent of the federal poverty guideline is automatically deemed indigent. GR 34(a)(3)(A), (B). Second, a litigant whose household income is above 125 percent of the federal poverty guideline may still be deemed indigent if the trial court finds that recurring basic living expenses or "other compelling circumstances" render that person unable to pay the mandatory fees and charges. GR 34(a)(3)(C), (D). Finally, a litigant represented by a "qualified legal services provider" (QLSP) is granted a presumption of indigency if counsel states that the individual was screened and found eligible for the QLSP's services. GR 34(a)(4).

We review a trial court's interpretation of a court rule de novo. Court rules are interpreted in the same manner as statutes. If the rule's meaning is plain on its face, we must give effect to that meaning as an expression of the drafter's intent. *Gourley v. Gourley*, 158 Wn.2d 460, 466, 145 P.3d 1185 (2006). When a rule is ambiguous, we must discern the drafter's intent by "reading the rule as a whole, harmonizing its provisions, and using related rules to help identify the legislative intent embodied in the rule." *State v. Chhom*, 162 Wn.2d 451, 458, 173 P.3d 234 (2007). Although the same rules of construction apply to statutes and court rules, when interpreting court rules we are not concerned about usurping the role of the legislature because we alone are uniquely positioned to declare the correct interpretation of any court-adopted rule.

The plain meaning of GR 34 establishes that a trial court must waive all fees once a litigant is determined to be indigent under the rule. The language of the rule provides expressly for "waiver," and no language exists that "waiver" is anything except waiver of all fees. Under WACO's argument, the trial court here could have ordered Jafar to pay half of the $200 fee or some other percentage of the fee. But the rule does not provide for "reduction" of fees, it provides for "waiver" of fees. If we were to accept WACO's argument, we would be rewriting the rule and opening the door for trial courts to "reduce" fees, an interpretation that cannot be found

7

under any language of the rule. Moreover, the rule's definition of "indigent" confirms this interpretation. Under GR 34(a)(3)(C), a litigant with income above 125 percent of the federal poverty guidelines can be found indigent only if the trial court finds that the individual lacks "the financial ability to pay the filing fees *and* other fees or surcharges for which a request for waiver is made." (Emphasis added.) In other words, a finding of indigency means a person lacks funds to pay anything. Thus, the only reasonable interpretation that is consistent with the full text of the rule is that all fees and surcharges must be waived for indigent litigants.

The history behind GR 34's adoption confirms this interpretation and further demonstrates that indigent litigants are entitled to full fee waivers under the rule. When the rule was initially proposed, the Washington State Bar Association's GR 9 cover sheet for GR 34 stated that the purpose of the rule is to establish "a statewide, uniform approach to presentation, consideration and approval of requests for waiver of fees and costs for low income civil litigants." *See* Br. of Pet'r, App. F at 2. The comments submitted in response to publication of the rule demonstrate that both supporters and opponents of the rule understood that GR 34 would create uniform, mandatory standards for granting civil fee waivers. For instance, the Washington State District and Municipal Court Judges' Association expressly requested that we amend the proposed rule, to give courts "the authority

to grant partial fee waivers, in addition to full fee waivers." *See* Br. of Pet'r, App. AA at 1. Notably, we did not incorporate that suggested change in the final rule, strongly suggesting that full waivers are mandatory.

WACO contends that the comments to GR 34 demonstrate that the trial court's authority to waive fees for indigent litigants is discretionary. However, nothing in the comments speaks to whether GR 34 permits trial courts to grant partial waivers. Even if we did read the comments to suggest that fee waivers are discretionary, "[w]hen interpreting a court rule, this court has eschewed a literal reading of the language where such a reading fails to effectuate the intent of the rule." *Chhom*, 162 Wn.2d at 458. Under WACO's interpretation, a determination of indigency could have variable legal significance because a trial court could still waive none, some, or all of the fees. Local jurisdictions would possess the power to impose on indigent litigants locally crafted fees or charges to generate funding for local programs or services. While such authority unquestionably exists, requiring payment from those individuals who cannot pay effectively denies access to justice to some. Such a result would also defeat the purpose of the rule to create a statewide, uniform approach to approval of waiver requests. Moreover, granting courts the discretion to waive fees could lead to inconsistent results and disparate treatment of similarly situated individuals, the very problems the rule was designed

9

to address. Thus, WACO's interpretation would not only require rewriting the language of the rule but would also conflict with the history, purposes, and principles of the rule.

Embracing WACO's argument would also allow trial courts to impose fees on persons who, in every practical sense, lack the financial ability to pay those fees. Here, the trial court ordered Jafar to pay $50 within 90 days. Jafar's financial statement indicates that she receives $385 per month in cash assistance. After paying her monthly expenses, which total $380, there is next to nothing remaining. We fail to understand how, as a practical matter, Jafar could make the $50 payment now, within 90 days, or ever. We have no record supporting the trial court's reasoning and its evident conclusion that Jafar could afford to pay any amount based on her financial situation. Such a construction of the rule resulting in such consequences is an unacceptable one.

GR 34 must also be interpreted in a manner that is constitutional. Consistent with our analysis of GR 34, principles of due process or equal protection require that indigent litigants have access to the courts and require a complete waiver of fees. This principle historically is firmly established. The foundation case is *Griffin v. Illinois*, 351 U.S. 12, 76 S. Ct. 585, 100 L. Ed. 891 (1956), where the Supreme Court struck down a rule that denied defendants access to appellate review if they

were unable to pay for a trial court transcript. The Court reasoned that such a rule violated due process and equal protection, and said that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Griffin*, 351 U.S. at 19.

Guided by the rationale in *Griffin*, the Court later recognized that due process requires states to provide access to the courts for indigent litigants in a narrow category of civil cases. *See, e.g., Boddie v. Connecticut*, 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971). In *Boddie*, several women receiving public assistance were barred from pursuing divorce proceedings because they were unable to pay the mandatory court fees and costs, totaling approximately $60. In that case, the Court held that due process prevents the State from denying access to civil indigent litigants where the State requires court involvement for changes to "a fundamental human relationship." *Boddie*, 401 U.S. at 383. Two concurring justices also recognized that closing the courts to indigent persons on the ground of nonpayment of fees violates equal protection principles. *See Boddie*, 401 U.S. at 383 (Douglas, J., concurring in result), 386 (Brennan, J., concurring in part).

A more recent civil case involving the principles established in *Griffin* was *M.L.B. v. S.L.J.*, 519 U.S. 102, 117 S. Ct. 555, 136 L. Ed. 2d 473 (1996). In *M.L.B.*, a mother was denied appellate review of a decision terminating her

11

parental rights because she was unable to pay the record preparation fees. The Court found that denying appellate consideration of the mother's claims violated equal protection and due process. However, the Court in *M.L.B.* emphasized that *Griffin* does not extend to all civil cases and is limited to those "involving state controls or intrusions on family relationships." *M.L.B.*, 519 U.S. at 116. The Court said, "Choices about marriage, family life, and the upbringing of children are among associational rights this Court has ranked as 'of basic importance in our society.'" *M.L.B.*, 519 U.S. at 116 (quoting *Boddie*, 401 U.S. at 376).

While these cases recognize and apply these constitutionally based principles and establish a constitutional "floor," and although Jafar's parenting plan action could be characterized as involving a fundamental right and controlled by this line of cases, no need exists to decide that here because GR 34, consistent with our cases, is broader than these base constitutional principles and requires fee waivers for indigent litigants in all cases. Even before the United States Supreme Court's decision in *Boddie*, this court recognized that imposing court fees on indigent litigants would violate the fundamental principles our system of justice is founded on and we held that courts have a duty to waive filing fees for *any* indigent litigant. In *O'Connor v. Matzdorff*, 76 Wn.2d 589, 458 P.2d 154 (1969), a plaintiff was prohibited from filing a civil action for damages because she could

not pay the $3.50 filing fee. There we said that "the exercise of a sound discretion dictates that a litigant should not be denied his day in court simply because he is financially unable to pay the court fees." *O'Connor*, 76 Wn.2d at 603. Four years later, we reaffirmed the principles in *O'Connor* and held that the court has a duty stemming from the state constitution to waive fees on appeal for indigent plaintiffs. *Iverson v. Marine Bancorporation*, 83 Wn.2d 163, 517 P.2d 197 (1973). We said that "[t]he administration of justice demands that the doors of the judicial system be open to the indigent as well as to those who can afford to pay the costs of pursuing judicial relief" and that "financial inability to pay the costs of pursuing a legal remedy will not operate to bar one from this state's system of justice." *Iverson*, 83 Wn.2d at 167. GR 34 grew out of these cases and gives objective meaning to these principles, and the rule establishes the requirements for trial judges to follow. The triggering determination is the finding of indigency. Once the trial court determines that a litigant is indigent, the rule then requires a complete waiver in order to allow access to the courts. No language in the rule exists supporting a grant of a partial waiver for indigent litigants, nor, given the cases decided, could such a decision be supportable.

Here, the trial court correctly determined that Jafar is indigent as defined in GR 34 because her household income is below 125 percent of the federal poverty

guideline. The trial court erred though by ordering Jafar to pay $50 in local surcharges. Fees and surcharges imposed on indigent litigants affecting the right to access justice are invalid. Accordingly, we vacate and remand with direction to waive *all* filing fees and surcharges.

No. 87009-8

_Johnson, J._

WE CONCUR:

_Madsen, C.J._

_Stephens, J._

_Owens, J._

_Wiggins, J._

_Fairhurst, J._

_González, J._

_J.M. Johnson, J._

_George McCloud, J._